[Civ. No. 2305.   Third Appellate District.—May 13, 1921.]

MARGARET COSGRAVE et al., Appellants, v. KATE DONOVAN et al., Respondents.

[1] BOUNDARY—AGREED LINE—CONSTRUCTION OF FENCE—EXISTENCE OF STAKES OF SURVEY—EFFECT OF.—An agreed boundary line between quarter-sections of land is not established by proof of the construction of a fence, where the stakes of the original survey locating the corners were in place when the fence was built under the agreement.

[2] Id.—Fixing of Line by Agreement—Uncertainty.—An agreement to fix a boundary line is void unless there is an actual or believed uncertainty as to the true line.

[3] Id.—Action to Determine Line—Agreed Line—Insufficiency of Evidence.—In this action involving a boundary line, the proof produced is not so clear and certain as to require a finding that the line was agreed upon.

[4] Id.—Conflict of Evidence—Appeal.—Where in such an action the evidence is conflicting as to an agreed line, the finding is conclusive on appeal.

[5] Id.—Agreement as to Line—Validity as to Parties.—An agreement as to a boundary line is not binding on one owning an undivided interest in one of the tracts, who was neither a party to the agreement nor gave consent thereto.

[6] Id.—Action to Fix Line—Evidence—Ill Feeling Between Parties—Harmless Error.—Where in an action involving a boundary dispute between quarter-sections the court did not fix the location of the line other than by reference to the public land surveys of the United States, it was not prejudicial error to permit the defendant to be examined as to a disagreement with the plaintiff and the existence of ill feeling between them.

[7] Id.—Determination of Ownerships—Rights of Parties.—In an action to quiet title involving a boundary dispute, the parties are entitled to have their respective ownerships adjudged.

[8] Costs—Appeal—Affirmance of Judgment Without Direction. Where the district court of appeal modifies and affirms a judgment without giving any direction as to costs, the costs of the appeal are to be paid by the respondents. (Opinion of supreme court on denial of hearing.)

[9] Appeal—Costs—Transfer of Cause.—The supreme court will not order a cause transferred to it solely for the purpose of reviewing the exercise of the discretionary power of a district court of appeal with relation to costs of appeal, where the matter was never in any way suggested to that court. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Calaveras County. J. A. Smith, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

2. Effect of compromise agreement locating division line at place known not to be the true boundary, note, 10 L. R. A. (N. S.) 610.

David Cosgrave and Snyder & Snyder for Appellants.

Virgil M. Airola for Respondents.

FINCH, P. J.—The plaintiffs sued to quiet their title to the southwest quarter of a section of land and to ascertain and adjudge the location of the eastern boundary line thereof. It is alleged that the plaintiffs and defendants together surveyed and laid out said boundary line; that the plaintiffs at large expense, and with the consent and acquiescence of the defendants, built a substantial fence on the line so fixed and that said line is the true boundary line of said land. The defendants answer, setting up title to the southeast quarter of said section and other lands in defendant Kate Donovan and denying the allegations of the complaint relative to the establishment of such boundary line. The court found for the defendants on the issue as to the boundary line and the plaintiffs appeal from the judgment.

It appears that there was a public road running east and west through the north half of the south half of the section and crossing the common boundary line.

Plaintiffs endeavored to show that the boundary line was established by agreement between the predecessors in title of the plaintiffs and defendants.

[1] In the year 1880 Michael Cosgrave owned the southwest quarter of the section and David Maloney the southeast quarter. Near the center of the dividing line there was then "a little open space" called the "flat." To the north and the south of the "flat" there were "trees and rock." During that year Maloney caused to be plowed "a double furrow and a single furrow, a few feet apart." Maloney then told George Cosgrave, a son of Michael, that "he had produced a line and to keep the sheep on the west side of the line." About the year 1883 Michael Cosgrave built a fence on "the same line" and Maloney "furnished a part of the lumber to build it." George Cosgrave, the only witness who testified concerning the transaction, said he did not remember "any conversation at all." The fence thereafter remained as at first located and was used by both owners. This fence was about a quarter mile long, running south from the road. The land was

surveyed by the United States in 1876. The testimony shows that the land was "staked" for several years; that the "stake" in the center of the section was in place for several years after the fence was built. It is plain that this evidence is insufficient to prove an agreed line. The "stakes" of the original survey locating the corners were in place when the fence was built, and, hence, there could have been no uncertainty at that time as to the location of the true line. [2] The law applicable is well settled. "The doctrine of an agreed boundary line and its binding effects upon the coterminous owners rest fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. When that uncertainty exists, or is believed by them to exist, they may amongst themselves, by agreement, fix the boundary line, and that agreement will bind all the consenting parties. Acquiescence is merely evidence of the agreement and can properly be considered as evidence of an agreement only when a formal agreement would itself have made a binding contract. But a formal agreement to fix a boundary line is not valid, indeed is void, if the parties know, or one of them knows, that the agreed line is not the true line, or, in other words, if there be not an actual or believed uncertainty as to the true line. This is so because under our law title to real property can be transferred only by descent, devise, conveyance *inter vivos,* or by adverse holding, and to allow parties where their common boundary line was not uncertain or in dispute by a mere agreement to give one title which belongs in another would be the recognition of a mode of transferring title not countenanced by law." (*Clapp* v. *Churchill,* 164 Cal. 745, [130 Pac. 1061]. See, also, *Lewis* v. *Ogram,* 149 Cal. 505, [117 Am. St. Rep. 151, 10 L. R. A. (N. S.) 610, 87 Pac. 60]; *Mann* v. *Mann,* 152 Cal. 23, [91 Pac. 994]; *Grants Pass Land etc. Co.* v. *Brown,* 168 Cal. 457, [143 Pac. 754]; *Friedman* v. *Southern California T. Co.,* 179 Cal. 266, [176 Pac. 442]; *Staniford* v. *Trombly,* 181 Cal. 372, [186 Pac. 599]; *Wilder* v. *Nicolaus,* 50 Cal. App. 776, [195 Pac. 1068].)

[3] The proof produced is not so clear and certain as to require a finding that the line was agreed upon. (*Grants Pass Land etc. Co.* v. *Brown,* 168 Cal. 457, [143 Pac. 754].)

[4] In an effort to prove an agreed line north of the road, the plaintiff introduced evidence to the effect that in the year 1908 one of the plaintiffs, James Cosgrave, and the defendant W. F. Donovan laid out and agreed upon the location of the line and that the plaintiffs built a fence upon the line so located, Donovan furnishing part of the material. Donovan denies that he agreed to this line. The court found against the plaintiffs on this issue and, in view of the conflict in the evidence, such finding is conclusive on appeal. [5] Furthermore, the evidence shows that the defendant Kate Donovan, the wife of W. F. Donovan, then owned an undivided interest in said southeast quarter and that she was neither a party to the alleged agreement nor gave her consent thereto and, consequently, was in nowise bound by it.

[6] The court sustained objection to the following question propounded to the defendant W. F. Donovan, who was a witness for the defendants: "Now then, after you and Mr. Cosgrave made that survey and before this action was commenced you had some disagreement, some ill feeling?" Whether or not the ruling complained of was erroneous, it did not prejudice the substantial rights of the plaintiffs. The witness had testified to but two material matters: (1) Relative to the alleged agreed line north of the road, and, as has been pointed out, that issue was necessarily determined against the plaintiffs because Kate Donovan was not a party to the agreement; (2) that a subsequent survey showed that the plaintiffs' fence north of the road inclosed about an acre of the southeast quarter of the section, and this evidence is uncontradicted. Further, the court did not fix the location of the dividing line, other than by reference to the public land surveys of the United States. The evidence did not furnish the court with the necessary data to more definitely locate the line.

[7] The court limited its judgment to the lands lying north of the road. The complaint alleged ownership of all of the southwest quarter of the section. The answer does not deny this allegation. The defendants alleged ownership of all of the southeast quarter. The evidence established such ownership. The parties were entitled to have their respective ownerships adjudged. The court found that the plaintiffs are the owners of the southwest quarter of the section and that the defendant Kate Donovan is the owner

of the southeast quarter. The conclusions of law provide that the respective parties are entitled to a decree quieting their titles to said lands and then is added the following: "provided, however, that the lands south of the Old County Road are not affected hereby." The judgment is likewise limited to the lands north of "the Old County Road."

Since the plaintiffs' title to the whole of the southwest quarter is admitted by failure to deny the allegation of ownership in the complaint, no finding on the issue thus tendered was necessary. The proviso quoted is not a finding of fact, but a conclusion merely, and does not limit the findings of fact to the lands lying north of the road.

It is ordered that the judgment be modified by striking therefrom, wherever it appears therein, the following clause: "of all that portion lying north of the Old County Road." As thus modified the judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 11, 1921, and the following opinion then rendered thereon:

THE COURT.—[8] Judgment was given herein by the district court of appeal of the third appellate district modifying the judgment appealed from and affirming the judgment as thus modified. No direction was given as to costs, with the result that, under the law and our rules, respondents will be compelled to pay the costs of appeal. Application is made to us to transfer the cause to this court solely for the purpose of making provision for the payment of said costs by appellants, it being claimed that under its discretionary power the district court of appeal should have provided that appellants do not recover costs of appeal. No application for such a provision was made to the district court of appeal.

[9] This court will not order a cause transferred to this court solely for the purpose of reviewing the exercise of the discretionary power of a district court of appeal with relation to costs of appeal, where the matter was never in any way suggested to that court.

The application is denied.